USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 6, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                              :

LISA A. GIBBONS and REVIVE INVESTING,  :
LLC,

                                :         14-cv-9061 (KBF)
                    Plaintiffs,      :

                                :      OPINION & ORDER

           -v-                :

QUINN MORGAN, ZM PRIVATE EQUITY    :
FUND I, L.P., ZM PRIVATE EQUITY FUND II,:
L.P., and ERICKSON INCORPORATED,    :

                       :
                  Defendants.      :

----------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

     In this action, plaintiffs seek disgorgement of alleged "short-swing" profits

realized by defendants in violation of Section 16(b) of the Securities Exchange Act of

1934, 15 U.S.C. § 78p(b).  (ECF No. 27.)  Defendants have moved for summary

judgment, arguing that plaintiffs' claim is precluded as a result of a related class

and derivative settlement approved by the Delaware Court of Chancery in 2016.

(ECF No. 89.)  For the reasons stated below, defendants' motion for summary

judgment is GRANTED.

## I.    FACTUAL BACKGROUND

     The following facts are taken from the parties' various submissions under

Rule 56.1, and are undisputed unless otherwise noted.[1]

---

[1] The parties have filed three motions for summary judgment in this action with three separate 56.1 statements; the final such statement relies, in part, on the prior two.  Per order of this Court dated August 25, 2017 (ECF No. 106), the Court considers all of the parties' previous Rule 56.1 statements

a.    The disputed transactions

Erickson Incorporated ("Erickson") is an aircraft manufacturing and operating company headquartered in Portland, Oregon.  (The ZM Defs.' Rule 56.1 Statement in Supp. of Their Cross-Motion for Summ. J. and Resp. to Pls.' Rule 56.1 Statement of Material Facts ("Defs.' Statement") (ECF No. 55) ¶ 1.)  Evergreen Aviation, Inc. ("Evergreen Aviation") was an aviation company also headquartered in Portland.  (Pls.' Reply to Defs.' Rule 56.1 Statement ("Pls.' Reply") (ECF No. 63) ¶ 88.)  Prior to the events giving rise to this action, Evergreen Helicopters, Inc. ("Evergreen Helicopters") was a wholly-owned subsidiary of Evergreen Aviation. (Id.)

On March 18, 2013, Erickson acquired 100 percent of the stock of Evergreen Helicopters from Evergreen Aviation (the "Evergreen Transaction") in exchange for a package including: (1) $185,000,000 cash; (2) 4,008,439 shares of Erickson Preferred Stock ("Preferred Stock"); (3) a note for $17,500,000; and (4) an additional earn-out amount.  (Defs.' Statement ¶¶ 46, 50.)  The Evergreen Transaction officially closed on May 2, 2013 (the "Closing Date"). (Id. ¶ 55.)

Defendants ZM Private Equity Fund I, L.P. ("ZMPEF1") and ZM Private Equity Fund II, L.P. ("ZMPEF2") (collectively, the "ZM Funds"), together with affiliated entities including ZM EAC LLC ("ZMEAC"), owned a majority of Erickson's Common Stock ("Common Stock") on the Closing Date.  (Pls.' Reply to

---

as incorporated by reference into the present summary judgment motions.  The motion resolved by this Opinion & Order is the motion for summary judgment at ECF No. 89.

Defs.' Rule 56.1 Statement in Res Judicata Mot. ("Pls.' Res Judicata Reply") (ECF No. 103) ¶ 3.) This action principally concerns a series of transactions (the "disputed transactions") that the ZM Funds and ZMEAC executed in the weeks following the Evergreen Transaction. Although the parties dispute the exact nature and characterization of those transactions, there is no dispute regarding the precise amount of Preferred Stock acquired by the ZM Funds and the amount of Common Stock subsequently sold by ZMEAC. Specifically, ZMPEF1 acquired a total of 913,732.61 shares of Preferred Stock, and ZMPEF2 acquired a total of 391,559.70 shares on the Closing Date. (Defs.' Statement ¶ 64.) Subsequently, from May 16-30, 2013, ZMEAC sold a total of 250,000 shares of Common Stock in ten separate transactions. (Id. ¶ 71.)

b. <u>Litigation</u>

On August 8, 2013, an Erickson stockholder (the "Delaware Plaintiff") filed a derivative and class complaint (the "Delaware Action") arising out of the Evergreen Transaction in the Delaware Court of Chancery (the "Delaware Court"). (Pls.' Res Judicata Reply ¶ 1.) The Delaware Action included both: (1) derivative claims brought on Erickson's behalf; and (2) direct claims brought on behalf of a class of similarly situated Erickson stockholders. (Id.) Relevant to the present action, Count IV of the Delaware Action was a derivative claim alleging insider trading and breach of fiduciary duty in violation of Delaware state law. (Id. ¶ 7); see also Verified Class Action and Derivative Compl. ¶¶ 111-116, Montgomery v. Erickson Air-Crane, Inc., No. 8784-VCL (Del. Ch. Aug. 8, 2013). The Delaware Plaintiff

sought disgorgement and restitution of any profits that the defendants in that action realized as a result of the allegedly unlawful transactions.  (Pls.' Res Judicata Reply ¶ 7.)

On November 13, 2014, while the Delaware Action was pending, Michael Gibbons[2] filed the present action "in the name of and on behalf of Erickson."  (ECF No. 1.)  The operative complaint, filed on May 15, 2015, alleges that the disputed transactions constitute "short-swing" trading in violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Section 16(b)").  (ECF No. 27.)  Plaintiffs seek accounting and disgorgement of all profits that defendants realized as a result of the disputed transactions.  (Id.)

On January 15, 2016, the Delaware Plaintiff informed the Delaware Court that the parties to the Delaware Action had agreed on an initial settlement. (Pls.' Res Judicata Reply ¶ 23-4.)  Shortly thereafter, defendants moved to stay this case pending final settlement of the Delaware Action.  (ECF No. 64.)  This Court granted defendants' motion by order dated February 9, 2016.  (ECF No. 70.)

On September 12, 2016, the Delaware Court held a settlement hearing and issued an "Order and Final Judgment" (the "Delaware Judgment") approving the proposed settlement in full.  (Pls.' Res Judicata Reply ¶ 44.)  In approving the settlement, the Delaware Court released "any and all Claims that are based upon, arise out of, relate in any way to, or involve (in whole or in part) any of the facts

---

[2] Michael Gibbons was the original plaintiff in this action.  Following his death on October 31, 2015, his wife Lisa Gibbons was substituted as plaintiff by Court order dated January 15, 2016.  (ECF No. 62.)

alleged in the [Delaware] Action, including . . . the Evergreen Transaction [and] . . . sales of Erickson stock by entities affiliated with the ZM Defendants." (Id. ¶ 42.) The order further defined "Claims" to include "any and all manner of claims . . . of any kind, nature or description whatsoever . . . (including, without limitation, any claims under federal or state securities law . . . [and] all claims within the exclusive jurisdiction of the federal courts, or any claims that could be asserted derivatively on behalf of [Erickson]." (Id. ¶ 43, 45.) (emphasis added).

In light of the Delaware Judgment, defendants in this action moved for summary judgment based on res judicata on October 25, 2016; the Court may proceed at this point and rule on defendants' motion for summary judgment. (ECF No. 89.) The parties do not dispute the basic timeline recited above, nor do they dispute the literal terms of the Delaware Judgment. The only issue to be resolved by this Court is the legal effect of the Delaware Judgment on the present action.

II.     LEGAL PRINCIPLES

    a.     Summary judgment

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, the Court construes all evidence in the light most favorable to the nonmoving party, and draws all inferences and

resolves all ambiguities in its favor.  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

      b.     <u>Res judicata</u>

The doctrine of <u>res judicata</u>, also known as "claim preclusion," provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980) (citation omitted).  The doctrine "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."  <u>Id.</u> (citation omitted).  When the material facts are not in dispute, this Court may determine the preclusive effect of a prior judgment on motion for summary judgment.  <u>See, e.g.</u>, <u>Greco v. Local.com Corp.</u>, 806 F. Supp. 2d 653, 660 (S.D.N.Y. 2011) (citing <u>Salahuddin v. Jones</u>, 992 F.2d 447, 449 (2d Cir. 1993)).

In determining the preclusive effect of a state court judgment, federal courts must apply the law of the state in which the prior judgment was rendered.  <u>See Matshushita Elec. Indus. Co. v. Epstein</u>, 516 U.S. 367, 373 (1996); <u>Anderson News, L.L.C. v. Am. Media, Inc.</u>, 680 F.3d 162, 191 (2d Cir. 2012); <u>see also</u> 28 U.S.C. § 1738 (requiring that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the Courts of such State . . . from which they are taken.").  Because the

prior judgment on which the defendants base their motion for summary judgment was rendered in a Delaware state court, this Court must apply Delaware state law. In Delaware, "[a] settlement which is approved by a court has the same <u>res judicata</u> effect as a final judgment on the merits." <u>Schlaeppi v. Del. Trust Co.</u>, 525 A.2d 562, 565 (Del. Ch. 1986), <u>aff'd</u> <u>Schlaeppi v. Del. Trust Co.</u>, 523 A.2d 981 (Del. 1987) (citing <u>Ezzes v. Ackerman</u>, 234 A.2d 444 (Del. 1967) and <u>Maldonado v. Flynn</u>, 417 A.2d 378 (Del. Ch. 1980)).

Under Delaware law, <u>res judicata</u> precludes a later-filed claim where: "(1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree." <u>RBC Capital Markets, LLC v. Educ. Loan Tr. IV</u>, 87 A.3d 632, 643 (Del. 2014) (quoting <u>LaPoint v. AmerisourceBergen Corp.</u>, 970 A.2d 185, 192 (Del. 2009)). Two of those factors—whether "the parties to the original action were . . . in privity" with the current parties and whether "the original cause of action . . . was the same as the case at bar"—warrant further clarification.

The second factor asks whether the parties to the current action are "the same . . . or in privity" with the parties to the prior adjudication. <u>Id.</u> The Delaware Supreme Court has held that parties are "in privity" for purposes of <u>res judicata</u> when "their interests are identical or closely aligned such that they were actively

and adequately represented in the first suit." <u>Aveta Inc. v. Cavallieri</u>, 23 A.3d 157, 180 (Del. Ch. 2010) (citations omitted). This factor does not require a direct contractual relationship; instead, privity is "a legal determination for the trial court with regard to whether the relationship between the parties is sufficiently close to support preclusion." <u>Id.</u> (internal quotation omitted).

To determine whether two claims constitute the same "cause of action" for purposes of the third factor, Delaware courts follow a "transactional" approach, asking whether "the claims in the later litigation ar[ise] from the same transaction that formed the basis of the prior adjudication." <u>RBC Capital Markets</u>, 87 A.3d at 645 (quoting <u>Maldonado</u>, 417 A.2d at 381). The key inquiry is whether the two claims, though perhaps different in form and/or structure, are nonetheless "derive[d] from a common nucleus of operative fact[s]." <u>LaPoint</u>, 970 A.2d at 194 (quoting <u>Maldonado</u>, 417 A.2d at 383).

c. <u>Derivative actions</u>

A derivative action is one that "assert[s] injury to the corporate entity" as a whole, rather than the individual stockholder that brings the action. <u>Tooley v. Donaldson, Lufkin & Jenrette, Inc.</u>, 845 A.2d 1031, 1039 (Del. 2004). In other words, a derivative action is one that is brought by a corporate stockholder <u>on behalf</u> of the corporation. The Delaware Supreme Court has held that in determining whether an action is derivative or direct (that is, brought by the stockholder in an individual capacity), "[t]he analysis must be based <u>solely</u> on the following questions: [1] Who suffered the alleged harm—the corporation or the

suing stockholder individually—and [2] who would receive the benefit of the recovery or other remedy?" Id. at 1034 (emphasis added). This test is "widely accepted" and applied by the courts. Donoghue v. Bulldog Inv'rs Gen. P'ship, 696 F.3d 170, 176 (2d Cir. 2012) (citing Tooley, 845 A.2d at 1034). "In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large." Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008) (citing Gentile v. Rossette, 906 A.2d 91, 99 (Del. 2006)).

III.    DISCUSSION

Based on its review of the operative complaint, the Court concludes that plaintiffs' Section 16(b) claim is precluded by res judicata and must be dismissed. As an initial matter, there is no doubt (and no dispute) that factors one, four, and five set forth above[3] are satisfied:

- First, the Delaware Court clearly had jurisdiction to adjudicate the Delaware Plaintiff's claims for breach of fiduciary duty in violation of Delaware state law.

- Second, the Delaware Judgment is no doubt adverse to the current plaintiffs. The Delaware Judgment, if held applicable to the plaintiffs and claims in this case, requires this Court to dismiss the present action; it is therefore "adverse" to the current plaintiffs in the truest sense. See Order and Final J. ¶ 17, Montgomery, No. 8784-VCL (Del. Ch. Sept. 12, 2016) (permanently precluding "Erickson . . . and any person or entity acting for

---

[3] See RBC Capital Markets, 87 A.3d at 643.

or on behalf of [Erickson] . . . from commencing, instituting, or prosecuting" any released claim).

- Third, the Delaware Judgment is unquestionably "final." The Delaware Judgment completely and unequivocally disposed of the Delaware Action, and plaintiffs do not dispute this point.

Instead, the dispute here centers on factors two and three—that is, whether the current plaintiffs are in privity with the Delaware Plaintiff, and whether the current claims arise out of the same "cause of action" as the Delaware Action. See RBC Capital Markets, 87 A.3d at 643. The Court will address each factor in turn.

    a.    Privity exists between the parties

With regards to the second factor, it is clear to this Court that privity exists between the current plaintiffs and the prior class of plaintiffs. It is well-established in Delaware that "in a stockholder's derivative suit[,] a judgment entered . . . after . . . an approved settlement is Res judicata and bars subsequent suit on the same claim in behalf of the Corporation." Ezzes, 234 A.2d at 445 (citing Williamson v. Columbia Gas & Elec. Corp., 91 F. Supp. 874, 876 (D. Del. 1950)). Because the Delaware Plaintiff's insider trading claim was brought derivatively on behalf of Erickson, whether privity exists in this action turns on whether plaintiffs' claim is properly considered "derivative."

As previously noted, this Court must apply Delaware state law in determining the preclusive effect of a Delaware judgment. See Matshushita, 516 U.S. at 373. In Delaware, an action is considered derivative if it "assert[s] injury to

the corporate entity" rather than an individual stockholder.  See Tooley, 845 A.2d at 1039.  The only questions that are relevant to the "derivative" analysis (and indeed, the only questions this Court may consider) are: (1) who suffered the alleged harm; and (2) who would receive the benefit of the recovery.  Id. at 1034.  Here, the answer to both questions is: the corporation itself.

Plaintiffs' claim for disgorgement of "short-swing" profits arises under Section 16(b).  See 15 U.S.C. § 78p(b).  Section 16(b) prohibits a corporation's officers, directors, and "beneficial owners" from buying and selling for profit any securities of that corporation within a six-month period.  Id.  This outright prohibition is designed to "prevent[] the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer."  Id. (emphasis added).  As such, Section 16(b) prevents corporate officers from using insider information for their own personal gain, rather than for the corporation's benefit.

Section 16(b) explicitly provides that "[s]uit to recover [short-swing] profit may be instituted . . . by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer [.]"  Id. (emphasis added).  Thus, although an individual stockholder is statutorily empowered to bring suit in certain limited circumstances[4], that suit is nonetheless brought "in the name and in behalf of the

_____

[4] Section 16(b) further provides that an individual stockholder is only permitted to bring suit on behalf of the corporation if "the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter."  15 U.S.C. § 78p(b).

issuer."[5]  Id.  And that is consistent with the express purpose of Section 16(b), which is to prevent misuse of the corporation's information, not any individual stockholder's.  Id.  Even though each individual stockholder may be harmed by short-swing trading, they are harmed equally by virtue of their ownership of the corporation's stock.  No individual stockholder can demonstrate "individualized harm not suffered by all of the stockholders at large," and therefore by law, no individual stockholder can bring suit on their own behalf.  See Feldman, 951 A.2d at 733 (citation omitted).  Moreover, Section 16(b) is explicit that short-swing profits are "recoverable by the issuer," not an individual stockholder.  Id.  (emphasis added).  Thus, according to the controlling two-part test set out in Tooley, it is clear that a Section 16(b) claim is "derivative" under Delaware law.

In an effort to avoid this clear outcome, plaintiffs rely on a series of inapposite bankruptcy cases suggesting that Section 16(b) claims are direct rather than derivative.  Primarily, plaintiffs rely on In re XO Commc'ns, Inc., 330 B.R. 394, 430 (Bankr. S.D.N.Y. 2005), a bankruptcy case holding that a Section 16(b) action is not "derivative" for purposes of Section 362(a)(3) of the Bankruptcy Code.  But the XO court was concerned with an entirely different legal question— whether Section 16(b) vests an individual stockholder with an independent right to sue (and further, whether that individual right survives a corporation's decision to file for

---

[5] Though not controlling, courts in this Circuit have found that a Section 16(b) action is "derivative" for that very reason.  See, e.g., Donoghue, 696 F.3d at 175 ("Where, as here, a shareholder plaintiff pursues a § 16(b) claim on behalf of an issuer, the claim 'is derivative in the sense that the corporation is the instrument . . . for the effectuation of the statutory policy.'") (quoting Magida v. Cont'l Can Co., 231 F.2d 843, 846-47 (2d Cir. 1956)); see also Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (referring to a Section 16(b) action as a "shareholder derivative suit").

bankruptcy).  Id.  The XO court thus used the terms "direct" and "derivative" in a completely different sense than at issue here.  Although Section 16(b) may vest individual stockholders with an individual (or, "direct") right to sue, the suit still must be brought "in the name and in behalf of the issuer," and profits are only "recoverable by the issuer."  15 U.S.C. § 78p(b).  The XO holding is therefore not inconsistent with the Court's holding here.

As previously noted, the Delaware Supreme Court has held that "[i]n order to state a direct claim, the plaintiff must have suffered some <u>individualized harm not suffered by all of the stockholders at large</u>."  <u>Feldman</u>, 951 A.2d at 733 (citation omitted) (emphasis added).  The plaintiffs in this action cannot demonstrate any individualized harm distinct from that suffered by all of Erickson's stockholders— there is simply nothing unique or special about their ownership of Erickson stock that would suffice to make this a direct suit.  As such, it is clear that plaintiffs' Section 16(b) claim is derivative under Delaware law.  And because both the current claim and prior claims were brought derivatively on behalf of Erickson, the parties are in privity for purposes of <u>res judicata</u>.  <u>See</u> <u>Ezzes</u>, 234 A.2d at 445.

b.    <u>The claims arise out of the same transaction</u>

It is also clear to this Court that the current claim arises out of the same "transaction" as the Delaware Action.  Plaintiffs' claim arises from a series of May 2013 transactions in which the ZM Funds bought, and ZMEAC sold, certain quantities of Erickson stock.  (Defs.' Statement ¶¶ 64, 71.)  Count IV of the Delaware Action (alleging insider trading and breach of fiduciary duty) was based

13

on precisely the same transactions.  <u>See</u> Verified Class Action and Derivative Compl. ¶¶ 111-116, <u>Montgomery</u>, No. 8784-VCL (Del. Ch. Aug. 8, 2013).  Thus, the two claims share more than a "common nucleus of operative fact"—they depend on all of the same facts.  <u>See</u> <u>LaPoint</u>, 970 A.2d at 194.

Plaintiffs argue that the Delaware Judgment cannot preclude the current cause of action because the Delaware Court was without jurisdiction to adjudicate a federal Section 16(b) claim.[6]  But that argument falls flat in light of controlling precedent to the contrary.  In <u>Matshushita</u>, 516 U.S. at 377-78, the Supreme Court, applying Delaware state law, held that a state court judgment releasing exclusively federal claims precluded future litigation of those claims.  In doing so, the Supreme Court relied on a Delaware Supreme Court decision holding that "a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented <u>and might not have been presentable in the class action</u>." <u>Nottingham Partners v. Dana</u>, 564 A.2d 1089, 1106 (Del. 1989) (quotation omitted).

Taken together, these two cases stand for the proposition that under Delaware law, a state court judgment approving a class settlement that releases exclusively federal claims precludes future litigation of those claims arising out of

---

[6] In support of their argument, plaintiffs once again rely heavily on <u>In re XO Commc'ns, Inc.</u>, 330 B.R. at 430.  (ECF No. 102.)  This reliance is misplaced.  The <u>XO</u> court (rightfully) applied preclusion principles under New York law in determining whether the prior judgment was <u>res judicata</u> with regard to exclusively federal claims.  <u>Id.</u>  Here, the Court must apply preclusion principles under Delaware law.  As defendants correctly point out in their reply, there are important differences between New York and Delaware law on this particular point.  (ECF No. 104.)  As such, <u>XO</u> is simply not relevant.

an "identical factual predicate."  Here, because the disputed transactions in the original action and the present action are exactly the same, that standard is no doubt satisfied.

IV.    CONCLUSION

Because all of the elements of <u>res judicata</u> under Delaware state law are satisfied, the Delaware Judgment precludes plaintiffs' claim for disgorgement of short-swing profits under Section 16(b).  Accordingly, defendants' motion for summary judgment is GRANTED.

The Clerk of Court is hereby directed to terminate the present action.

SO ORDERED.

Dated:        New York, New York
              September 6, 2017

_____
          KATHERINE B. FORREST
          United States District Judge